**In re Julia A. SOININEN, Respondent.**

**A Member of the Bar of the District of Columbia Court of Appeals.**

· **No. 03–BG–771.**

District of Columbia Court of Appeals.

Argued June 22, 2004.

Decided July 15, 2004.

Julia A. Soininen, pro se.

Elizabeth A. Herman, Senior Assistant Bar Counsel, with whom Joyce E. Peters, Bar Counsel, was on the brief, for the Office of Bar Counsel.

Elizabeth J. Branda, Executive Attorney, for the Board on Professional Responsibility.

Before TERRY, SCHWELB and WASHINGTON, Associate Judges.

SCHWELB, Associate Judge:

The principal question in this case is whether an attorney's voluntary and unsupervised "self-suspension" while disciplinary proceedings against her were pending warranted her reinstatement earlier than would otherwise have been appropriate. Here, the Board on Professional Responsibility has recommended that respondent Julia A. Soininen receive a *nunc pro tunc*

six-month suspension, to run from the date she filed an affidavit in which, *inter alia,* she disclosed her decision to suspend herself. If we were to follow the Board's recommendation, Ms. Soininen's suspension would therefore already have been served by the time the order proposed by the Board would be issued by this court. Assuming, without deciding, that there exist some unusual scenarios under which more expeditious reinstatement may properly be based on a purported self-suspension, as here proposed by the Board, *cf. In re McLain,* 671 A.2d 951, 954 n. 4 (D.C.1996) (questioning this assumption), we conclude that Ms. Soininen has neither complied with the notice requirements applicable to suspended attorneys nor demonstrated the existence of "unique" or "compelling" circumstances on which a successful request for such favorable treatment would have to be based. *Id.* Accordingly, Ms. Soininen shall be suspended from practice for six months, the suspension to commence thirty days after the date of this order. *See* D.C. Bar R. XI, § 14(f).

# I.

## THE FACTS

### A. *Introduction.*

On September 9, 1999, this court placed Ms. Soininen, a member of our Bar, on interim suspension pursuant to D.C. Bar R. XI, § 10(c), following her convictions in Virginia of theft and of possession of a controlled substance. *In re Soininen,* 783 A.2d 619, 621 (D.C.2001) (*Soininen I* ). On October 25, 2001, we suspended Ms. Soininen for thirty days, but stayed the suspension and placed Ms. Soininen on probation for two years. *Id.* at 622.[1]

The present proceeding—we shall refer to it as *Soininen II*—concerns Ms. Soininen's unauthorized practice of law and her filing of false notices of appearance before the Executive Office for Immigration Review (EOIR), the Board of Immigration Appeals (BIA), and the Immigration Court, all during the period when she was subject to this court's order of interim suspension in *Soininen I.*[2] Ms. Soininen also represented to clients in immigration matters, and to persons whom she represented before the United States Department of Labor (DOL), that she was a member of the District of Columbia Bar in good standing, when in fact she was not.

The Board has recommended that Ms. Soininen be suspended for six months, but has proposed that the suspension should run *nunc pro tunc* to April 18, 2002, the date when Ms. Soininen filed an affidavit with the Board in which she asserted that she had refrained from the practice of law in the District of Columbia since September 9, 1999, and in which she further represented that, even though she was no longer under suspension, she would not practice law until the proceedings in *Soininen II* had been completed. Bar Counsel has excepted to the Board's recommendation, urging that the suspension be prospective. Because, *inter alia,* Ms. Soininen had *not* refrained from the practice of law in the District since September 1999; because, during her suspension, she made false, inaccurate, and misleading representations to this court, to other agencies, and to clients; because Ms. Soininen has not complied with the notice requirements for suspended attorneys contained in D.C. Bar R. XI, § 14; because Ms. Soininen has failed to show the existence of unique or compelling circumstances; and because

---

1. In formulating the sanction in *Soininen I,* the court sustained Ms. Soininen's claim of mitigation pursuant to *In re Kersey,* 520 A.2d 321 (D.C.1987).

2. For convenience, we shall refer to these entities by name or, collectively, as "immigration courts."

her self-suspension was unsupervised and not susceptible of supervision, we agree with Bar Counsel that *nunc pro tunc* treatment is not warranted.

## B. *Procedural history.*

On March 28, 2002, Bar Counsel filed a petition alleging that Ms. Soininen had violated the following District of Columbia Rules of Professional Conduct: Rule 3.3(a)(1) (knowing false statement of material fact to a tribunal); Rule 5.5(a) (practicing law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction); Rule 8.4(c) (dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(d) (serious interference with the administration of justice). An evidentiary hearing was held on May 20, 2002, before Hearing Committee No. 7. Bar Counsel introduced into evidence several exhibits and stipulations between the parties. Ms. Soininen testified on her own behalf.

On November 12, 2002, the Hearing Committee issued a Report and Recommendation in which it found by clear and convincing evidence that Ms. Soininen had violated Rules 3.3(a)(1), 5.5(a), and 8.4(c). The Hearing Committee recommended that no suspension be imposed for the violations stemming from Ms. Soininen's misconduct before the immigration courts, reasoning that she had already served a sufficient suspension for her misconduct. The Hearing Committee also recommended that Ms. Soininen be informally admonished by Bar Counsel or, in the alternative, that she be reprimanded by the Board, for her misstatements to clients respecting her Bar status. Bar Counsel excepted to the proposed sanction, con-

tending instead that Ms. Soininen should be suspended for one year.[3]

On July 25, 2003, following briefing by the parties and oral argument, the Board issued its Report and Recommendation. The Board adopted the Hearing Committee's findings with respect to Ms. Soininen's violations, but also concluded that she had violated Rule 8.4(d).[4] The Board recommended that the court impose a six-month suspension *nunc pro tunc* to April 18, 2002. Bar Counsel filed an exception, again objecting to the recommendation that Ms. Soininen's suspension be *nunc pro tunc*.

## C. *The evidence.*

The historical facts underlying this disciplinary proceeding are, for the most part, undisputed. Ms. Soininen acknowledges, and the evidence establishes, that she engaged in the unauthorized practice of law before immigration courts at a time when she was subject to this court's order of interim suspension in *Soininen I.* Ms. Soininen likewise admits that she falsely represented herself to be a member of the Bar, over a period of almost a year, in five separate notices of appearance filed with the EOIR, and she acknowledges that the last of these misrepresentations was purposeful and deliberate. Further, she does not deny that in letters to clients written after she knew that she was precluded by her suspension from practicing immigration law, Ms. Soininen effectively held herself out to be an attorney who was authorized to continue to represent these clients, when in fact she was not. Finally, while suspended from practice, Ms. Soininen practiced law before the Department of Labor (DOL); the uncontradicted evidence

---

3. Ms. Soininen did not file an exception to the Hearing Committee's Report.

4. Contrary to the Hearing Committee, the Board concluded that "any unauthorized practice before a tribunal necessarily taints

the judicial process in more than a *de minimis* way. To hold otherwise would be to trivialize the rules of admission to tribunals such as the Immigration Courts." We agree with the Board.

shows (though the Hearing Committee and Board did not find) that she represented to that agency and to her DOL clients that she was a member in good standing of the District of Columbia Bar when in fact she was not, and that she purported to represent the clients as an attorney when she was authorized to represent them only as a non-attorney agent.

### (1) *Facts relating to Soininen I.*

On April 15, 1999, Ms. Soininen was arrested on a charge of driving while intoxicated. *Soininen I,* 783 A.2d at 620. Thereafter, on the evening of April 28, 1999, she was arrested for stealing flowers and potting soil, with a cumulative value of less than $200, from a nursery at which she had stopped after attending an Alcoholics Anonymous meeting. When Ms. Soininen was arrested, she was in possession of a Schedule III controlled substance, the painkiller Vicodin, without a valid prescription.[5] *Id.* On May 24, 1999, Ms. Soininen entered a plea of guilty to driving while intoxicated. On the following day, she entered a separate guilty plea to theft and to the unlawful possession of a controlled substance. The court imposed a fine for these offenses, and Ms. Soininen was also sentenced to serve a ninety-day period of incarceration. However, the execution of the sentence of imprisonment was suspended, and Ms. Soininen was placed on probation. *Id.*

On June 19, 1999, Ms. Soininen reported her convictions to the Board. On September 9, 1999, this court suspended Ms. Soininen on an interim basis pursuant to D.C. Bar R. XI, § 10(c), and directed the Board to determine whether the offenses committed by Ms. Soininen involved moral turpitude. The case was referred to Hearing Committee No. 1, and following an evidentiary hearing, the Committee concluded that the underlying conduct did not involve moral turpitude. *Id* at 621.[6] The Hearing Committee found that Ms. Soininen had violated Rule 8.4(b) (commission of criminal act reflecting adversely on honesty, trustworthiness or fitness) and Rule 8.4(c) (dishonesty). The Committee concluded, however, that Ms. Soininen qualified for mitigation pursuant to *In re Kersey,* 520 A.2d at 325–28, on the basis of her addiction to alcohol and prescription drugs. *Soininen I,* 783 A.2d at 621.[7] The Hearing Committee recommended that Ms. Soininen be suspended from practice for thirty days, but that the suspension be stayed and that she be placed on probation for two years, the probation to be conditioned upon Ms. Soininen's maintaining her sobriety, with appropriate monitoring and reporting.

The Board on Professional Responsibility adopted the Hearing Committee's Report and Recommendation. Neither Bar Counsel nor Ms. Soininen excepted to the Board's proposed disposition. On October 25, 2001, in conformity with the unopposed recommendation of the Board, this court suspended Ms. Soininen from practice for thirty days, stayed the execution of the suspension, and placed Ms. Soininen on probation for two years, subject to the conditions of probation recommended by the Board. *Id.* at 622.

### (2) *Ms. Soininen's unauthorized practice of law during the period of interim suspension in Soininen I.*

### (a) *September 1999 through January 2001.*

Following the court's September 9, 1999 order of interim suspension, Ms. Soininen

---

**5.** The drugs in Ms. Soininen's possession had been stolen by her from a coworker's desk.

**6.** Bar Counsel did not contest this finding.

**7.** Bar Counsel did not oppose Ms. Soininen's *Kersey* claim.

curtailed her practice of law in District of Columbia courts, and she discontinued her former *pro bono* and probate practice. However, solely upon the advice of her attorney that immigration law was administrative law, and that she therefore did not have to be "a member in good standing" of the Bar to practice it, Ms. Soininen continued her practice before the immigration courts. Ms. Soininen did not disclose to her attorney, prior to receiving this advice, that in notices of appearance before immigration courts, she was required to represent that she was a member of the Bar in good standing and that she was not subject to any suspension order. Moreover, although Ms. Soininen was an immigration lawyer herself, and although she had originally believed, prior to receiving her counsel's advice, that the suspension order barred her from practicing immigration law, she accepted her attorney's opinion—one that was obviously very much to her advantage—without personally looking into the issue at all.

Predictably, the advice given to Ms. Soininen by her attorney, which ought to have sounded too good to be true, turned out to be fallacious. In order to be authorized to practice before the immigration courts, an attorney must be "a member in good standing of the [B]ar of the highest court of any State, possession, territory, Commonwealth, or the District of Columbia, and [must not be] under any order of any court suspending, enjoining, restraining, disbarring or otherwise restricting [her] in the practice of law." 8 C.F.R. §§ 1.1(f), 292.1(a)(1) (2001).[8] Ms. Soininen thus violated this court's interim suspension order by practicing before the immigration courts. Even the most rudimentary research would have disclosed this uncontroversial reality if Ms. Soininen had taken the trouble to conduct it.

During her interim suspension, Ms. Soininen also falsely represented to her clients in immigration matters that she was licensed to practice law, when in fact she was not. In retainer agreements, she identified herself as "Attorney at Law," "Abogado," and "Esq." The last retainer agreement in which she represented herself to be an attorney in this manner was dated January 24, 2001, sixteen days after she intentionally made a false representation to the EOIR, described below, with regard to whether she was a member in good standing of the Bar.

On January 14, 2000, January 18, 2000, April 18, 2000, August 30, 2000, and January 8, 2001, Ms. Soininen filed notices of appearance with the EOIR. These documents were form notices which had been completed by office assistants prior to Ms. Soininen's suspension and which were then copied for use in connection with the representation of individual clients. Each time Ms. Soininen filed a new notice of appearance, the partially completed form notice was photocopied, and the new client's name and address were added. Ms. Soininen and the client then signed the form. By signing the document, and by checking the appropriate box (or by having it checked for her), Ms. Soininen represented that she was a member in good standing of the District of Columbia Bar, and that she was not subject to "any order of any court ... suspending" her from the practice of law. On all five occasions, each of these representations was, of course, false.

Ms. Soininen acknowledges that in the January 8, 2001 notice of appearance, she deliberately concealed the fact of her suspension and falsely represented that she was authorized to practice law. According to Ms. Soininen, she was concerned that if she had disclosed that she was not a mem-

---

8. Ms. Soininen was admitted to practice only in the District of Columbia.

ber of the Bar in good standing, she would have been obliged to withdraw from the case, to the prejudice of her client.[9] When Ms. Soininen purposely decided, on January 8, 2001, to lie to the tribunal before which she was appearing, she must necessarily also have realized the obvious: the four forms that she had previously submitted contained the same false information regarding her bar status that she deliberately included in the fifth. Nevertheless, Ms. Soininen took no action to correct the four earlier notices, thus purposely perpetuating, rather than putting an end to, her past deceptions.

#### (b) *January 2001 through June 2001.*

In early January 2001, Ms. Soininen learned for certain what she should have realized from the outset, namely, that her continued practice of immigration law contravened this court's order of interim suspension. On January 11, 2001, Ms. Soininen consulted her attorney. On the following day, she received a letter from the attorney advising her that her continued practice before the INS was in apparent violation of INS regulations and that it might constitute the unauthorized practice of law. Counsel recommended that Ms. Soininen notify the INS of her criminal convictions and of this court's interim order suspending her from practice. Ms. Soininen did not, however, immediately terminate her unauthorized practice. Instead, she urged her employer, Capitol Immigration Services (CIS), to find another attorney to take over her cases. She recommended two attorneys whom she believed to be qualified, but nobody was hired to replace her. Finally, on June 13, 2001, Ms. Soininen resigned from CIS and took a position as a legal assistant with a firm in Falls Church, Virginia.

During the period from January to June 2001, Ms. Soininen did not file any pleadings or other submissions on behalf of a client in any court, but she continued to work on her CIS cases.[10] On June 12, 2001, the General Counsel of EOIR issued a notice informing Ms. Soininen that disciplinary action was to be taken against her. On the next day, following her resignation from CIS, Ms. Soininen wrote letters to each of her CIS clients on the stationery of the Falls Church firm. In these letters, Ms. Soininen identified herself as "Esq."— a title suggesting that she was an attorney at law—and she did not disclose that she had been suspended from practice or that she was no longer authorized to serve as the clients' attorney in pending immigration matters. Instead, Ms. Soininen informed the CIS clients that her new firm would welcome any former clients of her former employer, and that "I look forward to continuing to serve your immigration needs."[11] It is thus indisputable that almost half a year after she learned that her immigration practice was contrary to the suspension order, Ms. Soininen attempted to conceal her suspended status from her clients by implying that she was still authorized to practice immigration law.

All of the foregoing conduct occurred while Ms. Soininen's interim suspension in

---

9. This justification, if accepted, would logically apply to any unauthorized practice of law.

10. Most of her work involved applying for labor certificates at the DOL. The Board found that this work did not require Ms. Soininen to be licensed to practice law, but, as described below, this finding is not quite accurate.

11. Ms. Soininen points out, correctly, that *after* she had sent these letters to her CIS clients, her former employer, apparently in an attempt to retain these clients, sent each of them a letter detailing Ms. Soininen's criminal convictions and suspension. This after-the-fact development presumably lessened the effectiveness of Ms. Soininen's deceptions, but it did not affect their culpability.

*Soininen I* was in effect. On October 25, 2001, however, this court decided *Soininen I* on the merits, suspended Ms. Soininen from practice for thirty days, stayed the suspension pursuant to *Kersey*, and placed her on probation for two years. The court's order ended the interim suspension that had previously been in effect as a result of Ms. Soininen's criminal convictions. *Soininen I*, 783 A.2d at 622.[12]

(c) *Ms. Soininen's suspension from practice before the immigration courts.*

Meanwhile, on June 12, 2001, the Office of General Counsel of the EOIR charged Ms. Soininen with making false representations regarding her Bar status in five separate notices of appearance, in violation of 8 C.F.R. § 3.102(f); with practicing without a license while subject to this court's interim order of suspension, in violation of 8 C.F.R. § 3.102(e)(1); and with having committed a serious crime, within the meaning of 8 C.F.R. § 3.102(h). On July 6, 2001, Ms. Soininen was suspended from practice before the BIA, the immigration courts, and the INS, pending final disposition of the disciplinary charges against her. In November 2001, the Immigration Court found that Ms. Soininen had committed ethical violations and suspended Ms. Soininen for one year from practicing before any immigration court, the BIA and the INS.[13] The one-year period of suspension expired on November 19, 2002. Following the expiration of her suspension by the Immigration Court, Ms.

Soininen decided not to seek reinstatement to practice before immigration courts and agencies until the final disposition by this court of the disciplinary proceedings in *Soininen II.*

(d) *Ms. Soininen's affidavits.*

On August 28, 2000, Ms. Soininen filed an affidavit in *Soininen I* in purported compliance with D.C. Bar R. XI, § 14(g). She asserted in the affidavit that since October 22, 1999, she had not represented clients in litigated matters, that she had not accepted any new retainers or engagements, that she was "in compliance with the rules and regulations of the INS and continue[d] to represent individuals in administrative proceedings before the federal agency," and that she was "not admitted to practice in any other state or federal jurisdictions or before any other federal agencies." [14] In fact, as we have noted, Ms. Soininen was not in compliance with the INS regulations, for she was at that time practicing before the immigration courts without being a member in good standing of the District of Columbia Bar. Moreover, Ms. Soininen did not withdraw or correct this affidavit after she learned beyond any doubt that her claim of compliance was erroneous.

On April 18, 2002, following institution of formal disciplinary proceedings against her in *Soininen II*, Ms. Soininen filed a second affidavit. In this affidavit, which Ms. Soininen described as having been submitted in conformity with *In re Goldberg*, 460 A.2d 982 (D.C.1983), Ms. Soininen asserted that

---

**12.** Ms. Soininen's probation expired on October 25, 2003.

**13.** With respect to Ms. Soininen's claim that she had believed that she was acting lawfully, the Immigration Court wrote as follows:

> The respondent's explanation that she employed extremely flawed logic, without bothering to consult an attorney or the ethics panel of the D.C. Bar, before knowingly

committing such fraud does not in any way excuse her of responsibility for such action.

**14.** In this affidavit, Ms. Soininen mistakenly stated the effective date of the interim suspension as October 22, 1999. In her April 18, 2002 affidavit, she stated that she had not practiced in the District of Columbia since September 9, 1999, the true effective date of the order.

she had not represented any client before a District of Columbia court or tribunal since September 9, 1999. She further represented that since July 6, 2001, she had not represented a client, or filed any documents, applications or correspondence on behalf of a client before the INS or the EOIR. Ms. Soininen omitted from this affidavit any mention of her practice before the DOL.[15]

On January 21, 2003, Ms. Soininen filed a supplemental affidavit with the Board in which she reported the Immigration Court's order of interim suspension and her subsequent one-year suspension by that tribunal. She stated in this third affidavit that she had not represented any client in any court, forum or tribunal since July 2001; that she was currently employed as a legal assistant; and that she did not intend to resume the practice of law until the conclusion of the disciplinary proceeding in *Soininen II.* This self-suspension, however, was unsupervised; if Ms. Soininen had practiced law during this period, nobody who was aware of her doing so would have known that she was "suspended," nor would any such person have had any occasion to report her conduct. Moreover, Ms. Soininen did not file an affidavit, as required by D.C. Bar R. XI, § 14 for suspended attorneys, that she had given notice of her suspension to clients, opposing parties, and tribunals.[16] Indeed, she could not file such an affidavit because she had not given such notice. On

the contrary, as we have seen, Ms. Soininen represented to her immigration clients, at least implicitly, that she remained eligible to represent them at her new firm, and she "look[ed] forward to continuing to serve your immigration needs."

(d) *Ms. Soininen's practice before the DOL.*

It is undisputed that, while she was under suspension, Ms. Soininen practiced before the DOL. She has taken the position throughout these proceedings that her activities at the DOL did not require a law license. Indeed, the Board, agreeing with Ms. Soininen, found that "[m]ost of the work done by [Ms. Soininen] during her suspension period consisted of filings before state employment agencies and the Department of Labor. One is not required to be an attorney to do this work." As Bar Counsel points out, however, this blanket statement, while literally true, does not tell the whole story.

Although the DOL permits persons who are not attorneys to practice before it, non-lawyers must put their clients and the agency clearly on notice that they are acting as "agents" and not as attorneys. Except to the very limited extent discussed below, Ms. Soininen did not provide notice to the DOL that she was not acting as an attorney, *see* 20 C.F.R. § 656.20, and she gave no notice at all to her clients of this important circumstance.[17] On the con-

---

15. As we note in greater detail below, Ms. Soininen did a substantial amount of legal work before the DOL without revealing that she was representing clients as an agent but not as an attorney, a fact that she was required to disclose by DOL regulations.

16. It is true that, on its face, § 14 does not apply to self-suspensions. This is so because self-suspensions are not recognized or even mentioned in Rule XI. If a respondent proposes to rely on a self-suspension as the substantial equivalent of a court-imposed one, then

she must take all of the steps that an attorney who has been suspended by the court is required to take. *See McLain,* 671 A.2d at 954 n. 4. This reflects the underlying problem of self-suspensions—namely that, to date, they are completely unregulated and there is thus no guarantee that the public can properly be protected.

17. DOL regulations allow individuals to file on their own behalf, and permit non-attorney "agents" to file on their behalf when those agents make it clear to the DOL that they are

trary, Ms. Soininen's retainer letters, in which she agreed to represent clients who were seeking labor certificates, reflect that she represented herself to these clients as being an attorney, not an agent. These false representations, like the others described earlier in this opinion, occurred while Ms. Soininen was suspended from practice by order of this court.

Ms. Soininen testified before the Hearing Committee that she filed notices of appearance (Forms G–28) before the DOL, thus advising the DOL that she was representing the individuals as an attorney. *See* 20 C.F.R. § 656.20(b). Ms. Soininen stated that she represented hundreds of clients as an attorney before the DOL during the year 2001, long after the court had placed her under interim suspension. If, as she testified, she filed a notice of appearance in each case, she necessarily filed hundreds of incorrect notices. As she explained, "there were hundreds."

On their face, Ms. Soininen's retainer agreements reflected that she claimed to be representing her clients *as an attorney.* Moreover, Ms. Soininen explicitly so testified:

Q: You did submit G–28s for the people you were representing before the [DOL] during the time that you were suspended, isn't that correct?

A: Yes. That's correct.

Q: The G–28 and the EOIR–28 and all those [Form] 28s, they are all the same thing, they are all praecipes of appearance?

A: Yes.

Q: In those praecipes of appearance[,] you are saying who[m] you are representing and that you are representing that person as an attorney; is that correct?

A: Yes.

Q: And in every case for every client that you represented before the [DOL], before the INS, before the Immigration Court, before the [BIA], you file some kind of [Form] 28 Notice of Appearance, isn't that correct?

A: Yes.

Thus, by her own admission, Ms. Soininen held herself out as a District of Columbia attorney in good standing not only to her immigration clients, but also to the DOL, in hundreds of notices of appearance.

To be sure, Ms. Soininen also testified that in March 2001, she filed one notice of appearance before the DOL in which she described herself as a "former D.C. Bar member—reinstatement pending." This information was misleading; at the time, reinstatement was not "pending." On the contrary, Ms. Soininen's status was that of an attorney under an interim suspension, and she had no way of knowing when (and even whether) she would be reinstated. Indeed, having been convicted of driving while intoxicated, unlawful possession of a controlled substance, and theft, Ms. Soininen certainly had no assurance that she would be granted probation; she might well have been suspended from practice for a substantial period of time, and might properly have been required to prove her fitness to practice as a condition of reinstatement. *See, e.g., In re Spiridon,* 755 A.2d 463, 469 (D.C.2000) (imposing one-year suspension with fitness requirement following criminal conviction of misdemeanor theft); *In re Chisholm,* 679 A.2d 495, 503–06 (D.C.1996) (six-month suspension with fitness requirement for multiple acts of dishonesty). Moreover, the inaccurate March 2001 praecipe apparently constitutes the only document provided by Ms. Soininen to the DOL in which she made any disclosure at all that she was not

acting as agents, not as attorneys. When Ms. Soininen filed forms G–28 (notices of entry of

appearance) for her clients, she did so as an attorney, not as an agent.

a member in good standing of the District of Columbia Bar. Prior to March 2001, in numerous notices of appearance, Ms. Soininen had held herself out to her clients and to the DOL as a member in good standing of our Bar, when in fact she was not.

## II.

## THE BOARD'S REPORT AND RECOMMENDATION

Before turning to the applicable legal principles, we summarize only those portions of the Board's comprehensive Report and Recommendation that are relevant to the principal issue before us. As noted in our description of the procedural history, see Part I.B, *supra*, the Board found by clear and convincing evidence that Ms. Soininen violated four separate Rules of Professional Conduct by engaging in unauthorized practice and by making misrepresentations to the court, to various agencies, and to clients. The Board characterized Ms. Soininen's misconduct as "very serious."

The Hearing Committee found that there were no aggravating factors to be considered in the sanction calculus, and that the following factors mitigated Ms. Soininen's conduct:

(i) Respondent is a "credible witness and a conscientious, responsible lawyer very much concerned for the welfare of her immigration clients." H.C. Rpt. at 12.

(ii) Respondent is "highly motivated to rehabilitate herself" after having gone through a "bad period of drug and alcohol abuse." *Id.*

(iii) Respondent continued her immigration practice "in good faith reliance on her attorney's advice," her good faith evidenced by the fact that she discussed her immigration practice with Bar Counsel in June 2000 and that she reported to the Chief Administrative Judge in Washington an action she thought was inappropriate by an Immigration Judge in San Antonio. *Id.* at 13.

(iv) When she realized she could not lawfully continue her immigration work, she urged CIS to hire a replacement attorney. *Id.*

To the extent noted below, the Board agreed:

We agree that all of these are mitigating factors. In the circumstances of this case, however, we do not place substantial mitigating weight on Respondent's reliance on her counsel's advice that she was authorized to practice before the Immigration Courts. She acknowledged that she did not advise her disciplinary counsel that notices of appearance would represent that she was in good standing and not suspended. Respondent was an experienced immigration lawyer and, prior to receiving this advice, she had thought the interim suspension order precluded her practice. We by no means suggest that a respondent can never rely on the advice of counsel, but we do conclude that, in this setting, Respondent was obliged to check the applicable regulations, which are clear and unambiguous. We, therefore, disagree with the Hearing Committee's conclusion that in the circumstances present here, Respondent's unquestioning reliance on her counsel's advice in the first disciplinary matter was reasonable.[18]

---

**18.** The Board did not regard Ms. Soininen's conduct described in *Soininen I* as an aggravating factor. Instead, the Board invoked our precedents holding that where the misconduct underlying two separate disciplinary proceedings has occurred during the same time period, the sanction should be reviewed as if all of the matters were before the Board together. *See In re Thompson,* 492 A.2d 866, 867 (D.C.1985). As we explain in Part III.B, *infra,* we do not agree that this is the appropriate analysis in this case.

The Board was of the opinion—and the point is not disputed before us—that a six-month suspension is an appropriate sanction. The Board then stated that there were "'unique and compelling circumstances' in this case which justify a *nunc pro tunc* suspension." The Board reached this conclusion, *inter alia,* because Ms. Soininen had already been subject to a lengthy suspension, *i.e.,* a one-year suspension by the Immigration Court, as well as a "voluntary" self-suspension from October 25, 2001,[19] and because Ms. Soininen was "responsible [and] forthright in her dealings with Bar Counsel and others, and ... her actions were motivated by the desire to continue to provide service to clients." The Board concluded:

> Respondent was suspended from practice here in *Soininen I* from September 9, 1999 to October 25, 2001, when she was placed on two years' probation by the [c]ourt. Respondent's affidavits of April 18, 2002 and January 21, 2003, establish that she has not practiced law in the District of Columbia since September 9, 1999, and that she intends to continue to voluntarily refrain from practice pending resolution of this matter. Based on these affidavits, it appears that Respondent has not practiced law in this jurisdiction for about four years. We therefore recommend that the six-month suspension in this matter be ordered to run *nunc pro tunc* from April 18, 2002, the date Respondent affirmed she continued to refrain from practice in the District of Columbia, even after she could have resumed the practice of law in October 2001, when the [c]ourt placed her on probation in *Soininen I.* This is consistent with the policy expressed in *Goldberg* to the effect that, where a lawyer voluntarily

ceases practice in the District of Columbia, the District of Columbia suspension should run *nunc pro tunc* so as not to be "far beyond the degree of discipline warranted." *In re Goldberg,* 460 A.2d at 985.

## III.

## LEGAL ANALYSIS

A. *Standard of review.*

■■■ Section 9 (g)(1) of D.C. Bar R. XI provides that the court shall adopt the recommended sanction of the Board "unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." This rule "endorses the Board's exercise of broad discretion in handing out discipline that is subject only to a general review for abuse in that discretion's exercise." *In re Arneja,* 790 A.2d 552, 558 (D.C.2002) (citations omitted). The Board's recommended sanction thus "comes to the court with a strong presumption in favor of its imposition." *In re Hallmark,* 831 A.2d 366, 371 (D.C. 2003). "'Generally speaking, if the Board's recommended sanction falls within a wide range of acceptable outcomes, it will be adopted and imposed.'" *Id.* (quoting *In re Goffe,* 641 A.2d 458, 463–64 (D.C.1994)).

■■■ But "[a]lthough we must give considerable deference to the Board's recommendations in these matters, the responsibility for imposing sanctions rests with this court in the first instance." *In re Temple,* 629 A.2d 1203, 1207 (D.C.1993). Moreover, where, as in this matter, there is little or no precedent in our prior cases addressing the issue to be decided, and

19. The Board analogized the situation in this case to one in which reciprocal discipline is imposed to run concurrently with the discipline in the originating jurisdiction. *See In re Goldberg,* 460 A.2d 982, 984–85 (D.C.1983) (per curiam).

where, in the case most analogous to this one, *In re McLain,* 671 A.2d at 954 n. 4, we reached a decision which casts significant doubt on the Board's proposed disposition, "our role in reviewing the Board's recommendation may be more assertive." *In re Schneider,* 553 A.2d 206, 211 (D.C. 1989). Moreover, we regard the principal issue before us—namely, the legal consequences of an unsupervised self-suspension—as being substantially one of law, and to that extent our review is *de novo.* *In re Abrams,* 689 A.2d 6, 9 (D.C.1997) (en banc), *cert. denied,* 521 U.S. 1121, 117 S.Ct. 2515, 138 L.Ed.2d 1017 (1997).

## B. *Aggravating and mitigating factors.*

■ Before turning to the appropriateness of a *nunc pro tunc* suspension, we think it appropriate to comment on the Board's assessment of aggravating and mitigating factors. The Board found none of the former and several of the latter. Our view is somewhat different.

The present case—*Soininen II*—is not Ms. Soininen's first brush with the disciplinary system. Ms. Soininen's initial discipline in *Soininen I* was precipitated by her commission of serious criminal offenses. Nevertheless, it is the Board's view that *Soininen I* should not be regarded as an aggravating factor. This is so, according to the Board, "because of the closeness of time and the close relationship between [Ms. Soininen's] unauthorized practice and the first proceeding." The Board has therefore "recommend[ed] a sanction in this case which would be appropriate had the two cases been before the Board at the same time." The Board writes that "[t]his is not a situation where a respondent fails to 'learn the lesson' from one disciplinary proceeding and engages in an entirely new violation some time later. But Bar Counsel contends that "this is exactly such a situation, and the previous misconduct should be considered

evidence in aggravation." We agree with Bar Counsel.

Many, or even most, of the ethical violations at issue in this proceeding—*Soininen II*—were not committed at or near the time of Ms. Soininen's misconduct in *Soininen I.* Ms. Soininen was convicted of the criminal offenses in April 1999. The misrepresentations and unauthorized practice which led to the disciplinary proceeding now before us apparently commenced following her interim suspension soon thereafter, but this misconduct continued at least until July 2001. Moreover, Ms. Soininen's ethical violations in *Soininen II* are entirely new, they have a different quality to them, and they are only tangentially related to the misconduct that generated the original discipline. Ms. Soininen was not charged in *Soininen II* with continuing to commit the same kinds of criminal acts, *i.e.,* theft, driving while intoxicated, or unlawful possession of a controlled substance, that led to sanctions against her in *Soininen I.* On the contrary, in *Soininen II,* she disobeyed the court's order of suspension, and she violated the Rules of Professional Conduct, in new and different ways which were unrelated to the crimes that she had committed in 1999. The only "close relationship" between the two cases is one of cause and effect; but for *Soininen I,* Ms. Soininen would not have been suspended, and she could not have run afoul of this court's suspension order or committed the ethical violations that are the subject of *Soininen II.*

Further, Ms. Soininen's criminal convictions in *Soininen I* were not practice-related, and they did not involve misconduct affecting her clients. Her violations in the instant matter are directly related to the practice of law, and they involve misrepresentations to tribunals and to Ms. Soininen's own clients. Moreover, Ms. Soininen's *Kersey* defense in *Soininen I* has no application here. Much of her misconduct

in *Soininen II* occurred after she offered proof in the first disciplinary case that she had been substantially rehabilitated. If, as Ms. Soininen contends, and as the Board found, her judgment and reasoning were no longer negatively affected by her former substance abuse—if she had, in fact, conquered her affliction—then she must be held fully accountable for her ethical violations in *Soininen II*. Considering the chronology of the misconduct in the two cases, and the striking differences between the wrongdoing in *Soininen I* and the ethical violations in *Soininen II,* we consider the previous misconduct to be an aggravating circumstance.

We are also of the opinion that not all of the "mitigating" factors discerned by the Hearing Committee and by the Board are persuasive or significant. The Board adopted the Hearing Committee's finding that Ms. Soininen was a "credible witness" and a "conscientious, responsible lawyer," notwithstanding her repeated misrepresentations to the court, to the immigration agencies, to the DOL, and to her clients (as well as her earlier theft, her drug possession, and her driving while intoxicated). The Hearing Committee saw and heard Ms. Soininen testify, and was in the best position to assess her demeanor and credibility at the hearing on May 20, 2002.[20] We must therefore accept the Committee's evaluation of her testimony. Nevertheless, we are constrained to agree with the following observation in Bar Counsel's brief:

> It is ironic, to say the least, that an attorney found to have made repeated misrepresentations to the Immigration Court, the Department of Labor, the

public and clients that she was in good standing as a District of Columbia attorney, would get credit for being "forthright."

The Board found, as did the Hearing Committee, that Ms. Soininen was "highly motivated" to rehabilitate herself from a "bad period of drug and alcohol abuse." Ms. Soininen has not, however, presented a *Kersey* defense to her misconduct in *Soininen II*. Indeed, the Hearing Committee found that Ms. Soininen

> appears to have cured herself of alcohol and prescription drug abuse and appears to be emotionally stable and competent to practice law. Bar Counsel has not contended otherwise.

Ms. Soininen's success in rehabilitating herself is, of course, commendable, and there may be less likelihood, on account of her efforts, that her misconduct will recur. Nevertheless, the Hearing Committee's finding has little, if any, relevance to Ms. Soininen's culpability in regard to her ethical violations in *Soininen II*.

Finally, the Board stated that "[w]hen [Ms. Soininen] realized [that] she could not lawfully continue her immigration work, she urged CIS to hire a replacement attorney." However praiseworthy this advice to her employer may have been—she had apparently been the only attorney at CIS—the fact is that Ms. Soininen continued to hold herself out as an attorney to clients and to the DOL for several months *after* she finally realized, in January 2001, that she was prohibited from engaging in an immigration practice. Indeed, she failed to disclose her suspension, and persisted in misrepresenting her Bar status, *even after she left CIS.*[21]

---

20. In fairness to Ms. Soininen, we should add that during her *pro se* argument before this court, she also came across as an able and sincere lawyer, and made a generally favorable impression.

21. As we have noted, the Board largely rejected the Hearing Committee's view that Ms. Soininen's reliance on her counsel's advice that she was authorized to continue to practice immigration law was a significant mitigating factor.

C. *Appropriateness of a nunc pro tunc suspension.*

(1) *Lack of notice pursuant to D.C. Bar R. XI, § 14.*

■ Section 14 (f) of D.C. Bar R. XI provides, with exceptions not here applicable, that "an order of disbarment or suspension shall be effective thirty days after entry unless the [c]ourt directs otherwise." Under this provision, "suspension normally becomes effective thirty days after the entry of the suspension order." *In re McLain,* 671 A.2d at 954 n. 4. The presumption, therefore, is that a suspension will be prospective.

An attorney who has been disbarred or suspended from practice is also subject to a number of notice requirements pursuant to § 14. He or she must notify every client in a non-litigated matter, § 14(a), as well as every client in a litigated matter, § 14(b), *inter alia,* "of the order of disbarment or suspension and of the attorney's consequent inability to act as an attorney after the effective date of the order." Similar notification must be given to all adverse parties, § 14(c), and client papers and property must be returned or delivered to clients. § 14(d). Finally, the attorney must file a detailed affidavit establishing his or her compliance with each of the foregoing requirements. § 14(g). Ms. Soininen, apparently supported by counsel for the Board, contends that these notice requirements did not apply to her, but we are at a loss to understand why this should be so if, as Ms. Soininen urges, a self-suspension is to be treated as a suspension. Further, if Ms. Soininen takes this position because, in her view, a self-suspension does not require notice, then under the regime that she advocates, the consequences of a self-suspension would be far less serious than the consequences of a suspension imposed by the court. If her position were adopted, the result would be that an attorney's unilateral suspension could not be deemed to be discipline equivalent to a court-ordered suspension.

In *McLain,* the Board recommended that the respondent attorney be suspended for ninety days. The attorney filed an exception to the proposed discipline, but he subsequently withdrew it. The attorney then claimed that he had unilaterally "suspended himself" from practice, and he moved this court to order that his suspension be deemed to have run, *nunc pro tunc,* from the date of his self-suspension. The court denied the motion:

> Bar Counsel opposes the motion, noting *inter alia* that respondent has not represented that his unilateral suspension complied with the requirements of Rule XI, § 14(a), (b), (c) and (d) regarding notice to clients and counsel for adverse parties and return of papers and other property of clients, and that respondent had not filed an affidavit complying with § 14(g).... We question, but need not decide, whether an attorney may "self-suspend" in order to qualify for earlier reinstatement under Rule XI, § 16(c).... [W]e agree with Bar Counsel that respondent is ineligible for suspension *nunc pro tunc* because he has failed to demonstrate satisfactory compliance with the affidavit requirements of Rule XI, § 14. *In re Slater,* 627 A.2d 508, 509 (D.C.1993); *In re Mulkeen,* 606 A.2d 136, 137 (D.C.1992). Moreover, to the extent that respondent argues that consideration of his self-imposed suspension justifies *nunc pro tunc* suspension so as to mitigate or lessen the sanction that is ordinarily imposed ... we also agree with Bar Counsel that respondent has failed to demonstrate the presence of "unique" or "compelling" circumstances that would justify lessening what would otherwise be the sanction necessary to protect the public interest.

*See In re Fowler*, 642 A.2d 1327, 1331 (D.C.1994).

*McLain*, 671 A.2d at 954 n. 4.

Bar Counsel argues, and we agree, that the reasoning that persuaded the court not to order *nunc pro tunc* treatment in *McLain* should likewise preclude such treatment here. Like the respondent in *McLain*, Ms. Soininen has failed to comply with the notice and affidavit requirements of D.C. Bar R. XI, § 14.[22] Ms. Soininen did not and could not file a § 14 affidavit averring that she had complied with the notice requirements of a suspended attorney because, when she purportedly suspended herself, she not only failed to give notice to clients, opposing parties and tribunals of her suspension, but affirmatively misled clients regarding the status of her Bar membership. The June 2001 letters which Ms. Soininen sent to her former clients at CIS (whom she continued to represent during her interim suspension) did not comply at all with the notice requirements of § 14. To the contrary, in these letters, Ms. Soininen used the title "Esq." and advised the clients that they remained in need of legal representation, that she had joined a new firm, and that she looked "forward to continuing to serve your immigration needs." These statements differed dramatically from what § 14 requires a suspended attorney to disclose, namely, that she has been suspended from practice and that she can no longer represent the clients' legal interests.[23] Consequently, like the attorney in *McLain*, Ms. Soininen failed to comply with the notice and affidavit requirements of D.C. Bar R. II, § 14. We agree with Bar Counsel that, on this basis alone, she

should be ineligible to receive a *nunc pro tunc* sanction.

Moreover, when an attorney unilaterally "self-suspends," Bar membership records do not reflect that the attorney's status has changed to that of a suspended member. There is no "voluntarily suspended" or "self-suspended" category of Bar membership. *See* D.C. Bar R. II, § 4 (Classes of membership). Therefore, the public, the Bar, and the courts have no means of determining that a self-suspended attorney who claims to have ceased practicing law has actually done so.

Here, Ms. Soininen notified Bar Counsel on April 18, 2002, that she had suspended herself from practice. This notification came approximately nine months after she claimed to have discontinued practicing law. From July 2001 until April 18, 2002, not even Bar Counsel was aware that Ms. Soininen considered herself to be serving a "suspension," albeit one imposed by herself. After April 18, 2002, although Bar Counsel had been notified of Ms. Soininen's purported self-suspension, Bar membership records continued to reflect that she was an active member in good standing, as she had been since the court's order in *Soininen I* terminating her interim suspension.

The lack of a public record of self-suspension prevents the disciplinary system from monitoring the activities of an attorney who, like Ms. Soininen, claims to have suspended herself. Bar Counsel advises us that most attorneys who have been prosecuted by her office for violating an order of disbarment or suspension have

22. The Board's Report refers to a D.C. Bar R. XI, § 14 affidavit which Ms. Soininen filed on August 28, 2000. This affidavit, in which Ms. Soininen claimed that she was "in compliance with the rules and regulations of INS" when in fact she was not, should not be confused with the affidavit that suspended

attorneys are required to file, but which Ms. Soininen did not file, after her claimed "self-suspension" in July 2001. See note 16, *supra*.

23. Ms. Soininen remained on interim suspension until October 25, 2001, long after she wrote these misleading letters.

been apprehended because a member of the public has inquired regarding a particular attorney's status, discovered that the attorney was not licensed to practice law, and filed a complaint with the Office of Bar Counsel.[24] When an attorney fails, as Ms. Soininen did, to provide written notice of her suspension to clients, tribunals, and opposing counsel, unauthorized practice by that attorney is not likely to be detected. A formal published court order of suspension should therefore ordinarily be required in order to alert the public, the Bar, and any court or agency that the attorney is not licensed to practice. We agree with Bar Counsel that secret, unilateral suspensions should be discouraged. In our view, such self-imposed discipline will rarely, if ever, be an effective or acceptable substitute for a sanction imposed by the court and capable of being monitored by Bar Counsel.

Moreover, treating a period of self-suspension as though it were a suspension by the court differs materially from crediting an attorney for time during which he or she was suspended in a foreign jurisdiction. In *In re Goldberg*, 460 A.2d at 985, this court held that an attorney sanctioned by the disciplinary authorities of another jurisdiction should ordinarily serve his or her reciprocal District of Columbia suspension concurrently with the suspension imposed in the original disciplining jurisdiction. We viewed concurrent sanctions as appropriate in reciprocal proceedings, provided that the attorney promptly notifies Bar Counsel of the suspension in the foreign jurisdiction and agrees to refrain from practicing in the District during the period that the foreign suspension is in effect. In such cases, however, Bar Counsel promptly notifies the court and re-

quests an order of interim suspension pursuant to D.C. Bar R. XI, § 11(d), and such an order is routinely issued without significant delay. A voluntary agreement not to practice in this type of situation is therefore in effect only for a very brief period, whereas a self-suspension not based on discipline in a foreign jurisdiction may, as in this case, continue for a significantly longer time. As we held in *McLain*, a self-suspension in circumstances such as those now before us should not be countenanced in the absence of compliance with the notice requirements of Rule XI, § 14.

### (2) *Absence of "unique" or "compelling" circumstances.*

Aside from a suspended attorney's obligations pursuant to § 14, *nunc pro tunc* treatment must also be denied because, in our view, and on the undisputed facts, Ms. Soininen has failed to make a persuasive showing that her circumstances are either "unique" or "compelling." The Board based its decision on four such circumstances, and we address each in turn.

### (a) *Ms. Soininen's earlier suspension by this court.*

The first "unique" or "compelling" circumstance relied upon by the Board was that Ms. Soininen "has already been subjected to a lengthy suspension." The suspension to which the Board referred, however, was issued on September 9, 1999, as an interim suspension in *Soininen I.* This suspension resulted from ethical violations different from those now before us in *Soininen II.* Moreover, given the criminal conduct with which Ms. Soininen had been charged, and of which she had been convicted, there was nothing at all "unique"

---

**24.** Ms. Soininen could have been prosecuted for criminal contempt for her violation of this court's interim order of suspension. *In re Huber,* 708 A.2d 259 (D.C.1998). While Bar Counsel did not pursue criminal sanctions, cases such as *Huber* reflect the seriousness and criminal nature of her misconduct.

about this interim suspension, nor did she have a "compelling" case against it. Indeed, but for the lenient treatment secured for her by her own insobriety under the controlling *Kersey* doctrine, Ms. Soininen might ultimately have been suspended for a substantial period and required to demonstrate fitness as a condition of reinstatement. We conclude that the interim suspension imposed on Ms. Soininen as a result of the crimes she committed in *Soininen I* does not provide a "unique" or "compelling" reason to justify *nunc pro tunc* treatment in relation to the extensive unauthorized practice and numerous false representations that are the subject of *Soininen II*.

(b) *Ms. Soininen's suspension by the Immigration Court.*

On November 20, 2001, the Immigration Court suspended Ms. Soininen for one year from practice before the various immigration agencies. This suspension was to continue until Ms. Soininen was licensed to practice in the District of Columbia or some other jurisdiction. But Ms. Soininen was not suspended from practice by this court on the basis of the Immigration Court's action, for the Immigration Court is not a tribunal on whose action reciprocal discipline may be based. *See* D.C. Bar R. XI, § 11(a) (defining a "disciplining court," in relevant part, as a federal court or "the highest court of any state, territory, or possession of the United States, and any other agency or tribunal with authority to disbar or suspend an attorney from the practice of law in any state, territory, or possession of the United States"). Although the Immigration Court's suspension order prohibited Ms. Soininen from practicing before immigration tribunals, it

did not preclude her from practicing law in the District.[25] In other words, once her interim suspension in *Soininen I* had expired, Ms. Soininen was free to write wills,[26] to represent litigants in civil and criminal cases, and generally to engage in the practice of law. To be sure, immigration law was Ms. Soininen's principal area of practice, and her suspension by the Immigration Court, though undoubtedly justified, could properly be included in the Board's calculus when the Board was considering the discipline that it should propose to this court. In our view, however, that suspension, and its consequences for Ms. Soininen's ability to practice in her specialty, did not qualify as a "unique" or "compelling" circumstance as these terms were used in *McLain*.

(c) *Ms. Soininen's perceived forthrightness.*

The Board also predicated its recommendation that Ms. Soininen receive *nunc pro tunc* treatment on the Hearing Committee's conclusion that she was "responsible [and] forthright in her dealings with Bar Counsel and others, and that her actions were motivated by the desire to continue to provide service to clients." This conclusion paints a more favorable picture than is warranted by the record. Although Ms. Soininen apparently testified "forthrightly" before the Hearing Committee, this forthrightness was then of comparatively recent vintage. The undisputed record of repeated misrepresentations does not reflect a history of forthrightness on Ms. Soininen's part, and a desire "to provide service to clients," while laudable in an individual licensed to represent these clients, is problematic where, as here, the

25. The reverse, of course, is not true; Ms. Soininen could only practice before the Immigration Courts if she was a member in good standing of the Bar of the District or of another jurisdiction.

26. Ms. Soininen apparently handled probate matters prior to her suspension.

prospective provider of legal services has been suspended from practice.

Beginning with *Soininen I,* which the Board (unlike this court) viewed as part of this case, Ms. Soininen was not forthright when she stole property which did not belong to her. She was likewise less than truthful when she purposely filed a false notice of appearance before the EOIR, or when she failed to correct earlier notices upon learning that they were false, or when she repeatedly represented to clients at the DOL that she was licensed to practice law when in fact she was not, or when she used "Esq." and similar titles in letters to clients even though her license to practice had been suspended. In addition, Ms. Soininen has at times been less than candid with this court. Indeed, as Bar Counsel points out, the timing and wording of Ms. Soininen's various affidavits undermine their credibility and weight.

Ms. Soininen filed her first affidavit on August 28, 2000, almost one year after the court had ordered her interim suspension and had called her attention to the requirements of D.C. Bar R. XI, § 14. In the affidavit, Ms. Soininen asserted that she was in compliance with the rules and regulations of the INS, but she was not. In reality, Ms. Soininen was representing clients before the immigration courts and asserting that she was a member in good standing of the District of Columbia Bar, when in fact she had been suspended from practice. In its brief, the Board excuses this misstatement in Ms. Soininen's affidavit, arguing that Ms. Soininen may not have been aware that she was violating INS regulations when she claimed to be in compliance with them. But at the very least, for the reasons we have previously set forth, Ms. Soininen *should have known* that she was not authorized to practice before immigration courts or agencies; if she did not know, it was because she did not take the necessary steps to find out.

Moreover, Ms. Soininen never withdrew or revised this affidavit even after she became aware that its contents were incorrect. Failure to correct a false affidavit, like failure to correct a false notice of appearance, perpetuates the deception.

On April 18, 2002, Ms. Soininen filed a second affidavit. She claimed therein that she had not "represented any clients in any District of Columbia court or tribunal since September 9, 1999," and that she had not "filed any documents, application or corresponden[ce] on behalf of any client in any matter before the Immigration and Naturalization Service or the Executive Office of Immigration Review since July 6, 2001." Given the record, this second affidavit is as revealing in what it leaves out as in what it contains. In the affidavit, Ms. Soininen omitted any reference to her practice before the DOL. As an experienced immigration attorney, Ms. Soininen must have been aware that practice before the INS or the EOIR did not encompass her work before the DOL. Ms. Soininen's failure to mention her extensive representation of clients before the DOL had the effect and, inferably, the purpose, of leading those responsible for the disciplinary system to believe that she was not practicing law, when in fact she was. Further, Ms. Soininen stated that she had not filed any pleadings or papers on behalf of a client, but she did *not* claim that she had stopped holding herself out as an attorney, or that she had ceased representing the interests of clients by providing legal advice or by otherwise taking responsibility for furthering their legal objectives—the very misconduct in which she had engaged during her interim suspension. The second affidavit was thus incomplete and, by reason of the omitted information, misleading. Moreover, if the facts about Ms. Soininen's practice before the DOL had been disclosed, the affidavit would have demonstrated that there had been no gen-

uine self-suspension; Ms. Soininen was still practicing law at that agency.

(d) *Improbability of recurring misconduct.*

Finally, the Board noted Ms. Soininen's "successful efforts at rehabilitation from her alcoholism and prescription drug addiction," and stated that "we do not see a substantial possibility of recurring misconduct" on the part of Ms. Soininen. Neither the Board nor the court has a crystal ball with which one can foretell the future, but "a [respondent's] past conduct is important evidence—perhaps the most important—in predicting [her] probable future conduct." *Cruz-Foster v. Foster,* 597 A.2d 927, 930 (D.C.1991) (citing *State v. Krol,* 68 N.J. 236, 344 A.2d 289, 302 n. 12 (1975)). In this case, the record reflects persistent unauthorized practice, and a continuous pattern of misrepresentations, which has included deception of the immigration courts, of the DOL, of Ms. Soininen's clients, and (by the filing of less than candid and misleading affidavits) of this court as well. Although there is no evidence that Ms. Soininen has practiced law or engaged in deceptive conduct since her claimed self-suspension, neither the Office of Bar Counsel nor any other regulatory entity has been in a position to monitor her activities while she was purportedly self-suspended. Moreover, notwithstanding her filing of three affidavits, Ms. Soininen has not disclosed whether, in her capacity as a legal assistant, she has used the title "Esq." or has otherwise indicated or implied that she is an attorney authorized to practice law. Likewise, so far as

we can discern, Ms. Soininen never apprised the former CIS clients—individuals whose business she sought for her new firm after she resigned from CIS—that she had been suspended by the court from the practice of law, nor did she inform them of her subsequent self-suspension. On this record, we cannot agree with the Board's recommendation that Ms. Soininen should be suspended *nunc pro tunc,* that "self-suspension" time should be treated as though the court had suspended her, and that she should receive no prospective sanction at all. We conclude, on the contrary, that for all of the reasons set forth in this opinion, Ms. Soininen is not entitled to credit for the period during which she claims to have suspended herself.[27]

Ms. Soininen makes the point—not an unreasonable one—that if she had resumed practice after the Immigration Court's suspension had expired, she would doubtless have been suspended once again when this court decided *Soininen II.* Therefore, she argues, it made sense to self-suspend and to ask the court to run any subsequent suspension concurrently with the self-suspension. But this disposition makes sense only if the voluntary suspension is on the same terms as, and no more lenient than, a court-ordered suspension. Arguably, a mechanism could be devised under which an attorney in Ms. Soininen's circumstances could request and consent to a concurrent suspension at the time of her suspension by the Immigration Court, or at some other appropriate time. If all parties were to agree, and if there were compliance with all of the requirements for suspended attorneys (including

---

**27.** The Board concluded that, as of July 25, 2003, Ms. Soininen had not practiced law in the District for about four years, and that an additional suspension would be excessive. Given Ms. Soininen's repeated violations of the suspension order (many of them described by the Board), her less than forthright actions and omissions relating to her practice before

the DOL, and the problems discussed in this opinion regarding the period of self-suspension, we do not agree that the sanction we impose is at all excessive. Indeed, if Bar Counsel had proposed that Ms. Soininen's reinstatement be conditioned on proof of fitness, it would have been our responsibility to give serious consideration to such a proposal.

§ 14 notice), then perhaps the "on again off again" element to which Ms. Soininen understandably objects could be avoided. But no request for such a disposition was made here, and we express no opinion regarding a hypothetical possibility, except to note that such an arrangement would require something resembling "plea bargaining" in a disciplinary proceeding. But whether or not a solution along the lines described above is feasible (or could be made feasible by a change in the applicable Rules), we conclude that, at least on a record such as the one before us, unsupervised self-suspension will not do, and a *nunc pro tunc* suspension is therefore inappropriate.

## IV.

## CONCLUSION

■ Although she initially proposed that Ms. Soininen be prospectively suspended for one year, Bar Counsel has not excepted to the imposition of a prospective six-month suspension. We recognize that Ms. Soininen has served a one-year suspension by the Immigration Court, and that she was thus unable during the period of suspension to practice in her specialty. Nevertheless, given the entire record, and in conformity with the authorities cited by the Board, we conclude that a six-month suspension is appropriate. Accordingly, Julia A. Soininen is suspended from practice in the District of Columbia for a period of six months, effective thirty days after the date of this order. We once again direct Ms. Soininen's attention to the requirements of Sections 14 and 16 of D.C. Bar R. XI, relating to the responsibilities of suspended attorneys.

*So ordered.*[28]

28. In a contention which is being made for the first time before this court, Ms. Soininen asserts that the court does not have jurisdiction over her unauthorized practice because "no one has claimed [that it] occurred in the District of Columbia." "We have consistently held that an attorney who fails to present a point to the Board waives that point and cannot be heard to raise it for the first time here." *In re Abrams,* 689 A.2d at 9 (citation and internal quotation marks omitted); *see also In re James,* 452 A.2d 163, 168–69 (D.C. 1982), *cert. denied,* 460 U.S. 1038, 103 S.Ct. 1429, 75 L.Ed.2d 789 (1983). In any event, Ms. Soininen held herself out as a licensed District of Columbia attorney and used the purported existence of that license to practice law while that license was in fact suspended. By doing so, she violated this court's suspension order and Rule 5.5(a). The court has jurisdiction over her as a suspended member of the District of Columbia Bar, regardless of where her misconduct occurred.

Rule 5.5 (a) states: "A lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction." Ms. Soininen practiced law in Virginia and before federal tribunals and agencies, in contravention of the regulations of those bodies. None of the tribunals and agencies before which she practiced permits an attorney to misrepresent his or her Bar status on the notice of appearance. Rule 5.5(a) encompasses unauthorized practice in any jurisdiction because, wherever a member of the District of Columbia Bar practices law, he or she must do so in compliance with that jurisdiction's regulations. *In re Kennedy,* 605 A.2d 600 (D.C.1992); *see also* D.C. Bar R. XI, § 1(a) ("[a]ll members of the District of Columbia Bar ... and all persons who have been suspended or disbarred by this [c]ourt are subject to the disciplinary jurisdiction of this [c]ourt and its Board on Professional Responsibility").

Ms. Soininen also claims that, if prospectively suspended, she will have to resign from the Virginia firm at which she has been employed since she left CIS. Even if we assume, *arguendo,* that she would be required to resign, Ms. Soininen concedes that "[c]learly there are employment ramifications for any lawyer who is suspended or disbarred." The "employment ramification" here complained of is the consequence of Ms. Soininen's own misconduct.