In the Matter of William M. THORNTON, a Member of the Bar of the District of Columbia Court of Appeals.

No. M–34–80.

District of Columbia Court of Appeals.

Argued Dec. 11, 1979.

Decided Sept. 16, 1980.

Willis C. Payton, Washington, D. C., for respondent.

Fred Grabowsky, Bar Counsel, Washington, D. C., with whom Joseph L. Mayer, Asst. Bar Counsel, Washington, D. C., was on brief, for Bd. on Professional Responsibility.

Before GALLAGHER, NEBEKER and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

On April 15, 1977, respondent was retained by Mr. James Aycox, the driver of a car involved in an accident, and his five passengers ages 14–21, to initiate a damage suit against the driver of the other vehicle. Respondent, on that day, accompanied Aycox and the passengers to a Corporation Counsel hearing where Aycox was charged with reckless driving in the same matter. Subsequent to the filing of the civil action, the criminal charge of reckless driving was dropped.

In the course of the civil action, Judge Halleck suggested to respondent that there was a potential conflict of interest problem in representing both Aycox and the passengers. Judge Halleck ultimately directed a verdict against respondent's clients, and subsequently referred the conflict of interest complaint to the Board on Professional Responsibility. In response to Bar Counsel's request, respondent submitted a document purportedly signed by Aycox and the passengers stating that they fully understood and had been advised of the conflict of interest problem on the day respondent was retained, but nonetheless, wished respondent to represent all of them.

A Hearing Committee of the Board heard testimony of respondent, Aycox, Judge Halleck, Pierre Torney, one of the passengers, and Mary Torney, Pierre's mother. It found violations of DR5–105(C) and DR7–102(A)(6).[1] The Committee recommended a

1. DR5–105 Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.

   (A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR5–105(C).

   (B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by this representation of another client, except to the extent permitted under DR5–105(C).

   (C) In the situations covered by DR5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

DR7–102 Representing a Client Within the Bounds of the Law.

one month suspension, to be waived if respondent successfully completed a one year probation period and completed a legal ethics course.

The Board concurred in the findings of fact, but recommended a sanction of suspension for a year and a day,[2] and completion of a legal ethics course.

Respondent filed a motion before this court to defer decision and remand this matter to the Board on Professional Responsibility due to the fact that one of the passengers/signatories who did not appear at the hearing had been located. Bar Counsel opposed the motion because such evidence would be merely cumulative. This court denied the motion.

We are asked to decide whether the findings of fact are supported by substantial evidence and whether the Board's recommendation of a year and a day suspension is an appropriate sanction.

The standard for this Court in reviewing disciplinary proceedings as established by our Rule XI, § 7(3) is:

The court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of the record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted.

The crux of the factual matter revolves around respondent's credibility in two areas, (1) the recognition and cure of the conflict of interest, and (2) the truthfulness of the document submitted in response to the former. The Board found that respondent failed to recognize the conflict or appreciate its implications even after the trial judge brought it to his attention. In support of this position, the Board (like the Committee) relied on Judge Halleck's comments and Pierre Torney's testimony that

he was not told of a possible claim against Aycox by the passengers. (June 14th transcript, p. 81). Respondent contends that the subject was addressed at the original meeting. He relies on Aycox's testimony (June 14th transcript, p. 42) and on his own recollection. Thus, two persons who were present at the original meeting with respondent testified, one that the conflict was discussed, and the other that it was not.

The second problem area revolves around the document submitted by respondent. The Committee found it to be "patently unbelievable," (Hearing Committee Report, p. 6), and thus found respondent in violation of DR7–102(A)(6), a serious offense. This finding was based on Mary Torney's testimony that she signed Pierre's and her own name at Aycox's request and that she had never discussed the contents with Pierre (June 14th transcript, p. 119.) Also, as stated above, Pierre testified that he did not recall any discussion with respondent concerning a conflict of interest. The record is silent as to why any of the other passengers failed to testify at the hearing.

The Hearing Committee which closely questioned and observed the witnesses and respondent was in the best position to determine credibility. It had no difficulty in finding that respondent was unaware of the conflict of interest and that the document was patently false. The Board concurred. The record clearly supports these findings of fact.

In determining whether the Board's sanction is consistent with dispositions for comparable conduct, we note there have been only a few disciplinary cases that involved the submission of false documents (which is considered the principal offense here). One proceeding, Docket # 32–74B, resulted in a private letter of reprimand. The respondent in that case consistently persisted, after formal and public reprimand from the

---

(A) In his representation of a client, a lawyer shall not:

\* \* \* \* \* \*

(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.

2. The year and a day sanction would require respondent to petition for reinstatement and make an adequate showing of rehabilitation before being readmitted to the Bar. D.C. App.R. XI, § 21.

bench, in submitting false affidavits attesting to his alleged efforts to locate names of numerous defendants against whom he sought publication. He compounded this misconduct by instructing the Marshal's office to make no efforts in locating such defendants. The Board, with vigorous dissent, considered the serious ill health of respondent as a prime mitigating factor.

In another proceeding, Docket # 160–75, respondent received an informal letter of admonition for filing an affidavit and praecipe declaring a divorce to be uncontested after having been informed by his client that he wished to contest.

Other proceedings have involved misrepresentations by respondents to investigating tribunals. In *In the Matter of Roy H. Duesterdick*, No. D–9–75, respondent gave testimony at the disciplinary hearing before a Hearing Committee which he later acknowledged to have been false. The proceeding resulted in Board recommendation of disbarment. In *In the Matter of John J. Spencer, Jr.*, No. D–36–80, this Court, by imposing reciprocal disbarment, adopted the Board's recommendation based on a finding that he had falsely represented to the Court (U.S. District Court for the D. C.) that he had mailed pleadings to that Court.

We are unable to say that the discipline recommended in this case–suspension for a year and a day and legal ethics education–is inconsistent for comparable conduct. We have no way of knowing, on this record, whether the Board considered the four cases recounted above–and indeed, there is a degree of inconsistency in the Board's recommendations for conduct such as that presented here. Our knowledge of the cases to which we have referred is a matter of noticing our own records which we think we are bound to do, even absent a request to do so. It would, of course, be helpful to all concerned if the Board were to articulate its reasons for departing–if it does–from discipline usually recommended for certain types of misconduct. We recognize that such was not possible in the beginning (ten years ago) for no "norm" had been established. Perhaps but for a few unique

cases a pattern has appeared to which the Board may refer in the interest of consistency and elucidation.

The recommended discipline is adopted and the clerk shall enter an appropriate order effecting its imposition.

*So ordered.*