In re William G. McLAIN, Respondent.

A Member of the Bar of the District of Columbia Court of Appeals

On Report and Recommendation of the Board on Professional Responsibility.

No. 94–BG–1119.

District of Columbia Court of Appeals.

Submitted Sept. 13, 1995.

Decided Feb. 29, 1996.

---

Before FERREN and RUIZ, Associate Judges, and BELSON, Senior Judge.

BELSON, Senior Judge:

Bar Counsel charged respondent, William G. McLain, with conflicts of interest with a client,[1] misrepresentation with respect to firm name and letterhead,[2] and conduct involving fraud, deceit and misrepresentation.[3] A hearing committee found, after a hearing, that there was clear and convincing evidence of the conflict of interest and misrepresentation of firm name and letterhead charges, but failed to find sufficient evidence to support the charge of conduct involving fraud, deceit, and misrepresentation. The hearing committee recommended that respondent be suspended from the practice of law for ninety days.

The Board on Professional Responsibility ("the Board") accepted the hearing committee's conclusion, and agreed with its recommendations for sanction. Respondent withdrew his initial exceptions to the report and recommendation of the Board. We accept the Board's recommendation regarding the conflict of interest charge, do not reach the misrepresentation charge for the reasons set out below, and suspend respondent from the practice of law for ninety days.

## I.

Respondent had been a legal assistant at the firm of Karr & Lyons commencing in 1975. In 1986, after respondent's admission

---

1. At the time of respondent's conduct, attorney discipline in the District of Columbia was governed by our Code of Professional Responsibility, which was then in effect. Disciplinary Rule 5–104(A) stated:

    A lawyer shall not enter into a business transaction with a client if they have differing interests therein and if the client expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client has consented after full disclosure.

As of January 1, 1991, the Code was replaced by the Rules of Professional Conduct. Rule 1.8(a) contains a provision similar to DR 5–104(A).

2. Bar Counsel alleged that respondent violated Disciplinary Rules 2–102(A), 2–102(B), and 2–102(C), and Rules 7.5(a) and 7.5(d) of the current Rules of Professional Conduct.

3. DR 1–102 provided in pertinent part:
    (A) A lawyer shall not. . . .
    (4) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. . . .

to the bar, the firm hired him as an associate attorney.

The firm represented Mr. and Mrs. Loeb, owners of the National Delicatessen, Inc., in various legal matters since 1978. The firm did not directly charge the Loebs, but rather accepted free lunches and catering in lieu of money. Respondent developed a platonic friendship with Mrs. Loeb, and the two became close confidantes and personal friends.

In December 1986, Mr. and Mrs. Loeb agreed to lend respondent and his then-wife $21,500, which the Loebs drew on their delicatessen accounts, to help respondent satisfy income tax obligations. Respondent signed a promissory note in which he agreed to pay the Loebs $21,500 on demand, plus 10% annual interest. At the time of the loan, respondent represented the Loebs in an ongoing attorney-client relationship as an associate of the Karr firm, but never advised them that their interests might be different from his own with respect to the loan. Moreover, respondent never explained the language of the promissory note to the Loebs or recommended that another lawyer review the note. Although the Loebs requested payment of the loan, respondent never repaid it.

In 1989, respondent again asked the Loebs for a loan, this time in order to purchase a house at 651 A Street, S.E. The Loebs refused, but offered to buy the house and allow respondent to repurchase it with his future earnings from his law practice. The Loebs also agreed to let respondent live in the house in exchange for monthly payments equal to the mortgage plus expenses and taxes. Although respondent asked an attorney, Arthur Delaney, to assist the Loebs in obtaining financing, Delaney did not serve as legal counsel to the Loebs. Respondent continued to maintain an attorney-client relationship with the Loebs, but never advised them concerning their legal positions or rights in connection with the transaction, or of how their interests differed from and potentially conflicted with his interests.

The Loebs purchased the house in August 1989 for $184,500, putting up $62,000 in cash and borrowing $122,500 from the National Bank of Washington. Respondent made some but not all of the payments due the Loebs from then until 1991. In November 1991, the Loebs severed their relationship with the Karr firm, obtained other counsel, and sued respondent for possession of the house and back rent. On August 27, 1992, the Loebs and respondent reached a settlement involving the house. Respondent vacated the house pursuant to the settlement, and the Loebs released respondent from his obligation to pay the $21,500.

## II.

██ Under Rule XI, § 9(g) of the District of Columbia Bar Rules, we "accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record." *In re Micheel,* 610 A.2d 231, 234 n. 10 (D.C.1992); *see* D.C.Code § 1–1510(a)(3)(E) (1992 Repl.). We are satisfied that there is substantial and undisputed evidence in the record to support the Board's findings that respondent engaged in business transactions with his clients, the Loebs, in violation of DR 5–104(A) and current Rule 1.8(a). Thus, we accept the Board's findings with respect to those charges. *See In re James,* 452 A.2d 163, 166–67 (D.C.1982), *cert. denied,* 460 U.S. 1038, 103 S.Ct. 1429, 75 L.Ed.2d 789 (1983).

With respect to the charge of misrepresentation of the firm's name, we would not be able to reach a conclusion without a careful analysis, as this court has not previously ruled on whether the inclusion of an associate's name in a firm name violates our Rules of Professional Conduct. Under the particular circumstances present here, we will not undertake that analysis in this proceeding. The Board's report stated in its discussion of sanction that its "finding of this violation does not affect the sanction. Were this the only violation, we believe that an informal reprimand would be appropriate." Because the issue is not contested here, and we do not have the benefit of adversary briefing and presentation, we deem it inappropriate to decide this issue of first impression.

## III.

██ The Board recommends that as a sanction respondent be suspended for ninety

days. It took into consideration several mitigating circumstances, such as respondent's remorse, his work as a professor at the District of Columbia School of Law, his representation of needy clients, and the fact that the conduct is unlikely to recur.

■ This court will "adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or would otherwise be unwarranted." D.C.Bar R. XI, § 9(g) (1995). In deciding whether to adopt the disposition of the Board, this court examines the "nature of the violation, aggravating and mitigating circumstances, the absence or presence of prior disciplinary sanctions, the moral fitness of the attorney, and the need to protect the legal profession, the courts, and the public." *In re Lenoir,* 604 A.2d 14, 15 (D.C.1992) (citations omitted).

■ Sanctions for similar conduct have ranged from a public censure to a one-year suspension. In most cases, violations of conflict of interest rules are accompanied by more serious disciplinary violations and thus warrant a more serious sanction. *See Lenoir, supra,* 604 A.2d at 15; *In re James, supra,* 452 A.2d at 164; *In re Thornton,* 421 A.2d 1 (D.C.1980). In cases involving only conflict of interest violations, we have imposed lesser sanctions. *See In re McGarvey,* M–129–82 (D.C. Dec. 9, 1982) (public censure); *In re Muldoon,* M–66 (D.C. Oct. 29, 1981) (ninety day suspension).

■ We conclude that the ninety day suspension recommended by the Board would neither foster a tendency toward inconsistent disposition, nor be unwarranted.[4] Accordingly, this court will order that William G. McLain be suspended from the practice of law in the District of Columbia for ninety days. Respondent's attention is drawn to the provisions of D.C.Bar R. XI, § 14(g), requiring the filing of an affidavit by suspended attorneys, and § 16, dealing with reinstatement and the effect thereon of a failure to file the required affidavit.

*So ordered.*

4. Respondent has moved that this court enter its order imposing sanctions upon him *nunc pro tunc,* to December 1, 1994, the date by which he had withdrawn his notice of exceptions and had unilaterally "suspended" himself from practice. He argues that once he had withdrawn his notice of exceptions, the court should have entered its order "as soon as the business of the Court permit[ed]," Rule XI, § 9g(1), just as would have been required if he had filed no notice of exceptions. Bar Counsel opposes the motion, noting *inter alia* that respondent has not represented that his unilateral suspension complied with the requirements of Rule XI, § 14(a), (b), (c) and (d) regarding notice to clients and counsel for adverse parties and return of papers and other property of clients, and that respondent had not filed an affidavit complying with § 14(g). Bar Counsel also points out that respondent failed to seek the relief of a *nunc pro tunc* order until almost five months after the court's initial notice of scheduling of arguments, and thus failed to seek prompt correction of the court's apparent oversight in leaving the case on the calendar for argument or submission of contested matters. We question, but need not decide, whether an attorney may "self-suspend" in order to qualify for earlier reinstatement under Rule XI, § 16(c). In any event we agree with Bar Counsel that respondent is ineligible for suspension *nunc pro tunc* because he has failed to demonstrate satisfactory compliance with the affidavit requirements of Rule XI, § 14. *In re Slater,* 627 A.2d 508, 509 (D.C.1993); *In re Mulkeen,* 606 A.2d 136, 137 (D.C.1992). Moreover, to the extent that respondent argues that consideration of his self-imposed suspension justifies *nunc pro tunc* suspension so as to mitigate or lessen the sanction that is ordinarily imposed (under Rule XI, § 14(f), unless the court directs otherwise, suspension normally becomes effective thirty days after the entry of the suspension order) we also agree with Bar Counsel that respondent has failed to demonstrate the presence of "unique" or "compelling" circumstances that would justify lessening what would otherwise be the sanction necessary to protect the public interest. *See In re Fowler,* 642 A.2d 1327, 1331 (D.C.1994). Therefore we deny the motion, and direct that respondent's suspension be effective as of the date of this order.